Justice Breyer,
dissenting.
Indiana’s statute requires registered voters to present photo identification at the polls. It imposes a burden upon some voters, but it does so in order to prevent fraud, to build confidence in the voting system, and thereby to maintain the integrity of the voting process. In determining whether this statute violates the Federal Constitution, I would balance the voting-related interests that the statute affects, asking “whether the statute burdens any one such interest in a manner out of proportion to the statute’s salutary effects upon the others (perhaps, but not necessarily, because of the existence of a clearly superior, less restrictive alternative).” Nixon v. Shrink Missouri Government PAC, 528 U. S. 377, 402 (2000) (Breyer, J., concurring); ante, at 190-191 (lead opinion) (similar standard); ante, at 210-211 (Souter, J., dissenting) (same). Applying this standard, I believe the statute is unconstitutional because it imposes a disproportionate burden upon those eligible voters who lack a driver’s license or other statutorily valid form of photo ID.
Like Justice Stevens, I give weight to the fact that a national commission, chaired by former President Jimmy *238 Carter and former Secretary of State James Baker, studied the issue and recommended that States should require voter photo IDs. See Report of the Commission on Federal Election Reform, Building Confidence in U. S. Elections §2.5 (Sept. 2005) (Carter-Baker Report), App. 136-144. Because the record does not discredit the Carter-Baker Report or suggest that Indiana is exceptional, I see nothing to prevent Indiana’s Legislature (or a federal court considering the constitutionality of the statute) from taking account of the legislatively relevant facts the report sets forth and paying attention to its expert conclusions. Thus, I share the general view of the lead opinion insofar as it holds that the Constitution does not automatically prohibit Indiana from enacting a photo ID requirement. Were I also to. believe, as Justice Stevens believes, that the burden imposed by the Indiana statute on eligible voters who lack photo IDs is indeterminate “on the basis of the record that has been made in this litigation,” ante, at 202, or were I to believe, as Justice Scalia believes, that the burden the statute imposes is “minimal” or “justified,” ante, at 204 (opinion concurring in judgment), then I too would reject the petitioners’ facial attack, primarily for the reasons set forth in Part II of the lead opinion, see ante, at 191-197.
I cannot agree, however, with Justice Stevens’ or Justice Scalia’s assessment of the burdens imposed by the statute. The Carter-Baker Commission conditioned its recommendation upon the States’ willingness to ensure that the requisite photo IDs “be easily available and issued free of charge” and that the requirement be “phased in” over two federal election cycles, to ease the transition. Carter-Baker Report, App. 139,140. And as described in Part II of Justice Soúter’s dissenting opinion, see ante, at 211-223, Indiana’s law fails to satisfy these aspects of the Commission’s recommendation.
For one thing, an Indiana nondriver, most likely to be poor, elderly, or disabled, will find it difficult and expensive to *239 travel to the Bureau of Motor Vehicles, particularly if he or she resides in one of the many Indiana counties lacking a public transportation system. See ante, at 213-215 (Souter, J., dissenting) (noting that out of Indiana’s 92 counties, 21 have no public transportation system at all and 32 others restrict public transportation to regional county service). For another, many of these individuals may be uncertain about how to obtain the underlying documentation, usually a passport or a birth certificate, upon which the statute insists. And some may find the costs associated with these documents unduly burdensome (up to $12 for a copy of a birth certificate; up to $100 for a passport). By way of comparison, this Court previously found unconstitutionally burdensome a poll tax of $1.50 (less than $10 today, inflation adjusted). See Harper v. Virginia Bd. of Elections, 383 U. S. 663, 664, n. 1, 666 (1966); ante, at 236-237 (Souter, J., dissenting). Further, Indiana’s exception for voters who cannot afford this cost imposes its own burden: a postelection trip to the county clerk or county election board to sign an indigency affidavit after each election. See ante, at 216-218 (same).
By way of contrast, two other States — Florida and Georgia — have put into practice photo ID requirements significantly less restrictive than Indiana’s. Under the Florida law, the range of permissible forms of photo ID is substantially greater than in Indiana. See Fla. Stat. Ann. §101.043(1) (West Supp. 2008) (including a debit or credit card, a student ID, a retirement center ID, a neighborhood association ID, and a public assistance ID). Moreover, a Florida voter who lacks photo ID may cast a provisional ballot at the polling place that will be counted if the State determines that his signature matches the one on his voter registration form. §§ 101.043(2); 101.048(2)(b).
Georgia restricts voters to a more limited list of acceptable photo IDs than does Florida, but accepts in addition to proof of voter registration a broader range of underlying documen *240 tation than does Indiana. See Ga. Code Ann. §21-2-417 (Supp. 2007); Ga. Comp. Rules & Regs., Rule 183-1-20.01 (2006) (permissible underlying documents include a paycheck stub, Social Security, Medicare, or Medicaid statement, school transcript, or federal affidavit of birth, as long as the document includes the voter’s full name and date of birth). Moreover, a Federal District Court found that Georgia “has undertaken a serious, concerted effort to notify voters who may lack Photo ID cards of the Photo ID requirement, to inform those voters of the availability of free [state-issued] Photo ID cards or free Voter ID cards, to instruct the voters concerning how to obtain the cards, and to advise the voters that they can vote absentee by mail without a Photo ID.” Common Cause/Georgia v. Billups, 504 F. Supp. 2d 1333, 1380 (ND Ga. 2007). While Indiana allows only certain groups such as the elderly and disabled to vote by absentee ballot, in Georgia any voter may vote absentee without providing any excuse, and (except where required by federal law) need not present a photo ID in order to do so. Compare Ind. Code Ann. §3-11-4-1 (West 2006) with Ga. Code Ann. §21-2-381 (Supp. 2007). Finally, neither Georgia nor Florida insists, as Indiana does, that indigent voters travel each election cycle to potentially distant places for the purposes of signing an indigency affidavit.
The record nowhere provides a convincing reason why Indiana’s photo ID requirement must impose greater burdens than those of other States, or than the Carter-Baker Commission recommended nationwide., Nor is there any reason to think that there are proportionately fewer such voters in Indiana than elsewhere in the country (the District Court’s rough estimate was 43,000). See 458 F. Supp. 2d 775, 807 (SD Ind. 2006). And I need not determine the constitutionality of Florida’s or Georgia’s requirements (matters not before us), in order to conclude that Indiana’s requirement imposes a significantly harsher, unjustified burden.
*241 Of course, the Carter-Baker Report is not the Constitution of the United States. But its findings are highly relevant to both legislative and judicial determinations of the reasonableness of a photo ID requirement; to the related necessity of ensuring that all those eligible to vote possess the requisite IDs; and to the presence of alternative methods of ensuring that possession, methods that are superior to those that Indiana’s statute sets forth. The Commission’s findings, taken together with the considerations set forth in Part II of Justice Stevens’ opinion, and Part II of Justice Souter’s dissenting opinion, lead me to the conclusion that while the Constitution does not in general prohibit Indiana from enacting a photo ID requirement, this statute imposes a disproportionate burden upon those without valid photo IDs. For these reasons, I dissent.